The next case for argument is 23-1415, ParkerVision v. TCL. Please proceed. Good morning, Your Honor. My name is Jason Charco and I represent ParkerVision. So why are we here today? Well, the PTAB decided that attorney argument and no evidence is sufficient on the key— Can we first figure out what things are now barred from this appeal? Sure. You're not going to argue claim construction anymore, is that right? Today, I'm not going to argue claim construction. I'm going to focus on Claim 4 of the patent, which nobody disputes there's no issue with in terms of any sort of issues. Right. Because Claim 3 is gone. Well, we believe there's a different record and there's— But Claim 3 was deemed to be unpatentable and we affirmed that in an earlier litigation, right? Correct. It was deemed to be— So it's gone. We believe there's a different record and under the Supreme Court's decision in— We're talking about preclusion again? Yes. I'm going to make it quick because it seems like he got that out early on today. So for Parkland-Hosiery Code, be sure, 439 U.S. 322 at 330 to 331, that's a Supreme Court case that talks about this particular situation is offensive collateral estoppel if we were to be barred by that. And the Supreme Court said courts should be very wary of that in situations just like this where a party like TCL could have joined up in the case, in the petition, and it only happened a couple of months after TCL entered, was sued, and they didn't. And the Supreme Court said you have to be wary of that because it's ripe for problems which happen just like we're in that right now where through no fault of our own, we're in a very weird position, which quite frankly is messed up, where basically you have a situation where we told the board it should be combined. The earlier case in this case, the board said no. Different records developed. We came to this court. We said it should be stayed. The first case should be stayed and everything should be consolidated. The Federal Circuit said no. Different records. So I believe that this is the type of case that the Supreme Court was talking about, that this is ripe for issues, and therefore we believe because there's a different record, it should be heard. But I think Claim 4 avoids that whole issue, so I would like to just- Do you happen to know whether the PTO has taken the, what's it called, cancelling step? I don't know that, Your Honor. Okay. So, sorry, Your Honor. If I may. So you were just going to focus on Claim 4 and whether, I guess, LAM teaches- Yeah. LAMs and FNs. LAMs and FNs. Yes. That's what I would like to do today. Okay. And the preamble issue is going to? We're not going to address that today. Okay. So the reason why we're here today is, I'm sorry, I forget where I left off, but the PTAB decided that attorney argument and no evidence on a key issue, and the issue is storing non-negative amounts of energy, that that was sufficient to invalidate a patent. And that's just, in our view, not right. It turns the process on its head, and we think that's an issue the court should address. And I'll go through this. So we'll talk about Claim 4. So our view is Claim 4 should be reversed. The decision and validity. We believe there was an Administrative Procedure Act violation, number one. Number two, we don't only think that there was no substantial evidence regarding the storage element limitation and the requirement of non-negligible amounts of energy, but we believe there was no evidence. And we believe the board had a backfill to deal with the fact that there was no evidence put forward by the petitioner. So quickly on the Administration Procedures Act violation. During the proceeding... Can I just ask you a question? Sure. Did our December 2023 decision address one or the other or both of the two points that you're now... No. Delved with a reference called TALO. No, but isn't the argument about material submitted in reply having come too late? I thought that was part of... It's a different issue. Different issue. It's a different issue here. Yeah. It is? It's a different issue here. Yes. There was an issue similar to that, but it's different facts. There's different issues here that had nothing to do with that case. So if I may, I could explain? Yeah. Okay. So in this case that we're currently in, what occurred is the following. So basically, TCL raised a new argument for the first time in their reply brief. We moved to strike. That was denied. We're saying that was an abuse of discretion. So what happened exactly? So when TCL filed their original brief, their petition, what they attached to the petition was the district court's decision, which held that a storage element, at least the relevant part, stored non-negligible amounts of energy. That was in the district court's decision on claim construction, an earlier decision from another case. They attached that to their petition. They then went ahead to talk about other of the district court's decision in their petition, and it was Exhibit 1013, which was the Markman order from the district court case, and that you can find in Appendix 4540. What is the new argument they raised in their reply? So the first time they raised statements that were made by the inventor, Mr. Soar, one of the inventors, in a Parker vision case from 2015, from years before this whole issue. Never heard about it before. So they had the opportunity when they filed their petition to address the issue of non-negligible amounts of energy. They said nothing. Even though they knew about it, the Markman ruling from a prior case about storage element and non-negligible amounts of energy, it was attached to their petition. They ignored it. Yet, and yeah. Let me see. Let me tell you what I'm understanding of this case. They didn't make this particular argument about negligible, non-negligible amounts of energy in their petition for the meaning of storage element. In the patent owner response, you had a very particular understanding of the term storage element. And it would mean something about, well, something about energy transfer systems. Right. And non-negligible amounts of energy. And then they came back and said, no, you don't have to have an energy transfer system inside of the claim, inside of storage element. And non-negligible amounts of energy. That was, so put the energy transfer argument aside. We're all addressing this non-negligible amounts of energy. It was an issue that they could have and should have discussed. They had the Fed Circuit decision. They knew about the Markman decision that talked about non-negligible amounts of energy. That's how you define storage element, the uncontested part. And so they didn't address it. Do we have any cases? I mean, we've got cases on the other side that say, no, it was okay as long as you had a chance to respond to it. I mean, you're talking about they should have raised it in the petition because there were other related cases or whatever going on. So they knew about it. They didn't know what you were going to raise in response to their petition. But now they're saying that's lexicography. So they knew about the definition. They're saying it's now lexicography that includes this non-negligible amounts of energy. And they decided not to address it. Now, we did get to respond on the SIR reply, but we couldn't use our expert to specifically address the issue that they knew about. They could have and should have raised, and they never did. How is this different from our December 2023 opinion where we said it was more than fine for them to raise their argument about having a counterclaim construction in their petition reply? Because in that case, they did not have a Markman ruling. They did not. There was no Markman ruling attached to their petition that they knew about that they talked about. And they just avoided this one issue in that Markman ruling. That was not in the prior case. There was no issue that they had some knowledge ahead of time. In that case, they said, well, we were just responding to what part provision said. In this case, they knew ahead of time. They had a claim construction ruling. They knew it. They ignored it. They talked about other portions of the claim construction ruling in their petition, but they ignored that part of it. So your argument is because of this other stuff going on, they should have known what you were going to offer in response, and they should have included that in the petition? It's not that they should have known what we were going to say. It's that they had a claim construction, and they relied on the claim construction of the court for other things. And they knew about it. It was attached to their petition. So there's no reason why they shouldn't have addressed this non-negligible amounts of energy. So the only thing they said in their petition, the only thing they said, capacitors or storage elements. That's it. Their expert didn't say anything about non-negligible amounts of energy. Where did that leave them? Then when we responded, they replied, they put new information in that we never heard of before. Our expert couldn't address those particular issues that they raised. My recollection of other cases is that, yes, while you're not allowed to introduce an expert report, you can file a request to do that move to be able to- I'm not aware that that happens. I'm not aware of the procedure that- I know it's definitely not allowed as like a right or anything. I don't know if there's a procedure to allow an expert to go ahead and file something later and how often that's even a thing, if it's even possible. So the bottom line is we weren't able to address the issue. So- But didn't you have an expert running all sorts of calculations? That but not in response to the specific issue where they talked about this commercial viable system, which was that new issue that first came about when TCL filed their reply brief. We didn't know about these issues. So we didn't know about the issues. We couldn't anticipate what they were going to say. They should have addressed these issues in their opening petition. They did not do so. And so we were left in a situation where we had nothing to respond to. So- It seems to boil down to what is the correct understanding of this court's Parker Vision versus Qualcomm opinion, right? It's partly correct. And that's the next issue I'm going to get down to. So I think we've talked about this issue. But they could have addressed it. They didn't address it. We had no ability to do a cert reply and have our expert address head-on the issues that they raised for the first time in the reply, and we think that's abuse of discretion. Now going back, if I could, to the point that I think you wanted to get to, which is the heart of the matter. So our position is that there is a reference to LAM and ENDS. That's what was used to invalidate the claim for. And our view is that there was no substantial evidence. There was no evidence at all that the capacitors of LAM and ENDS are storage elements and stores non-negligible amounts of energy. Dr. Steer, Parker Vision's expert, was the only one that provided any testimony whatsoever on non-negligible amounts of energy. Their expert provided zero. They had an opportunity for their expert to provide in a reply to address this non-negligible amounts of energy, which was this new theory that they put. They could not even get an expert to opine to counter what Dr. Steer was saying on non-negligible amounts of energy. It's not required as a matter of law? It's not required as a matter of law, but I'm going to get to the point in a minute. So what happened? Our view is they didn't meet their burden of proof. So what did the PTAB do? They had no evidence. So they went into the Parker Vision Qualcomm case from 2015. They said, OK, what's non-negligible amounts of energy? Well, the Fed Circuit tells us that it's energy distinguishable from noise. That's what the PTAB said. Then they say, OK, what's energy distinguishable from noise? How do you figure that out? They went back to the Fed Circuit decision in the Qualcomm Parker Vision case, and the Fed Circuit said transferring as much energy as possible to have a commercially viable system is proof that energy is distinguishable from noise. So now the issue became commercially viable. So now the PTAB says, well, what's commercially viable? But there was, again, no evidence. So TCL knew about this commercial viability issue. They did not have their expert opine on it at all. It's telling. They have an expert who probably spends hundreds of dollars an hour, and they could not get an expert to just say that it was a commercially viable system, and to say that what was in Lamb and Enns was a commercially viable system. They couldn't get an expert to do that. They had an opportunity, and they didn't do it, which is telling. And so all that was on the record was what Dr. Steer said about non-negligible amounts of energy, what Dr. Steer said was unrebutted, what he said was they didn't question his credibility. They just ignored it. So how did they get to a result? What they did is they backfilled. They said, okay, well, Lamb and Enns, or in particular Lamb, talks about a mobile handheld device. So it's enabled, right? So they had a backfill. There's no evidence. There's no evidence from the other side to say it's a commercially viable system. So they're like, okay, we're going to backfill. So how do we get to the result? What do we say? It's enabled. Lamb is enabled. And it talks in the background section, mind you, which the board did not say, Lamb talks about how the background of the invention is in the mobile space, right? And then Lamb talks, so it's aspirational. This is where our invention kind of lives. And they said, merely because of that, because the background section talked about a mobile device, and patents are presumed to be enabled. All of a sudden, now the patents are presumed to be enabled. That equals to commercially viable. And there's no case law that I'm aware of ever that says that something is enabled means it equals, that means it's a commercially viable system. They should have had evidence on it. TCL should have presented evidence on it. And they didn't present evidence. And they had all the opportunity in the world. And the board had nothing to rely on. So what did the board do? They came up with, well, patents are presumed enabled. And therefore, we're going to backfill it with this enablement argument. And there's no case law that says you could say, just because it says a mobile device in the background section, enablement just means it can downconvert, that Lamb and ENDS can downconvert. But it doesn't mean that all of a sudden it's this commercially viable system. Lamb and ENDS could be a test system. Like, there's no evidence, like, it's a test system, it's a real system. It's enabled from the point of view of downconversion. Okay. I'll reserve my time. Thank you. Thank you. Mr. McCrye, please proceed. Good morning, your honors. Christopher Reed on behalf of the appellate petitioners.  Let me just touch on one thing briefly. Claim three is canceled. There's a final decision by this court that claim three has been canceled. There was no assert petition, nothing filed to keep that claim three alive. So I don't fully understand counsel's argument as to why claim three somehow could be still viable. But for our purposes, claim three is canceled. And the arguments regarding claim three. I realize this is not where the action in the case, I thought I don't have the statute in front of me in 318 or 319, the cancellation is a separate ministerial act of the director that takes place sometime after proceedings are complete, where the proceedings result in a determination of unpatentability. That's what I meant by cancellation, that ministerial act that erases the claim from the books. Is that what you were referring to? And I thought, my general understanding, not based on much, is that the director does that twice a year or something, collects everything that needs to be canceled and cancels it. I was using the term canceled in terms of the board's decision. Oh, okay. Okay. No, it's a pretty fancier question. Turning to claim construction, as counsel said, they're arguing claim construction needs to be re-argued here. So I'll turn first to the alleged APA violation with respect to the reply brief. And as Judge Shen, as you suggested, the Parker v. Vidal case addressed the same situation. The attempted distinctions are just non-material. And in particular, like in the Parker v. Vidal case, our reply arguments responded to a construction that was first offered in this proceeding in their patent owner response. I guess the patent owner is raising a potentially interesting question, which is, if there's something foreseeable that the petitioner could see that it needs to address in the petition, but then doesn't, then have they given up the right to make that argument at a later point in time in the proceeding? And here, what I'm being told is the fact that there was some kind of markman order in a district court proceeding that gave a very particular claim construction, the very claim construction that the patent owner proposed in its patent owner response. And there's no argument that you were not aware of that markman order. In fact, you, for other reasons, cited and relied on that markman order in your own petition. So then the question becomes, is that a situation where it was entirely foreseeable that you needed to address that adverse claim construction in your petition, but you didn't? To answer that question, the board actually looked at this question in denying their motion to strike or apply arguments, and the board found that it was not foreseeable and not a reasonable expectation for us to guess which of the myriad of positions that Park Revision had asserted previously was going to be asserted in this particular IPR proceeding. And in particular, this claim construction order we're referring to was not from the underlying litigation behind this IPR. It was from the Incel case. It was not from our case. And in our case, in the complaint, this was acknowledged by the board, in the complaint, they did not assert that that was the proper way of reading storage element. The complaint simply said, storage element, e.g., a capacitor. And that is the approach we used in filing our petition. We used the implicit definition that they had provided in the complaint in this matter. And the board acknowledged that. But you were aware of the Markman order that was in a different litigation, right? At the time of your petition. That's correct. And in fact, you were using pieces of it in your petition. It is referenced in the petition, that's right. Not on this issue, but yes. So then the question is, well, why didn't you address the pieces of the Markman order that were unfavorable to you in your petition? We didn't address because, based on what we had at the time, that was not the position they were taking in the litigation that preceded this particular IPR proceeding. Again, and that's what the board held in denying their motion to strike. They said that the, this is found in appendix 50012, they said that our position on the term of the petition, the storage elements can simply be capacitors, is, quote, substantially the same as Parker Vision's assertion as storage elements in the underlying district court complaint. So for that reason, the board said it wasn't incumbent on us to guess that they were going to assert a different position other than what they put in their complaint in our petition. What if it was in the same litigation? What if the Markman was in the underlying litigation against you? Would you, do you feel like you would have needed to address it in your petition? It would have been a more compelling case to address it in our petition. Now, to be clear, the construction that we use in our reply brief is not the same construction that they assert in their, in their patent owner response. So we disagreed with the construction in their patent owner response. And we disagreed with the construction by the district court. So no point that we ever said that is the correct construction. What, and this court and the board disagreed with that construction in the Parker Vision versus Bedell case. So that is not the proper construction. We responded to the construction they raised in their patent owner response, just like in the Intel matter. And we said it's wrong. We said the board got it right in its decision in the Intel case, which it already issued at that point. And then we applied that construction in our response of arguments. And that is akin to what was described in both Axonix and this, and the Parker Vision versus Bedell case, that we were simply responding to arguments raised in the patent owner response. And for that reason, the board denied their motion to compel and did not abuse its discretion in doing so. Turning to the second argument made by counsel that there is no evidence in this case to support a finding of that the LAM versus the LAM or LAM plus ends discloses the claim of storage element. His argument today assumed something that's not correct with respect to what was required in the Parker Vision versus Qualcomm case. As your honor indicated, we relied, yes, on Mr. Sorrell's position in the Parker Vision versus Qualcomm case, which made its way into the holding, that to determine whether there's non-negligible energy, you look to whether the system, the receiver, successfully down converts. And we relied on that definition. Well, what he has read into in his argument today is he has added into that approach this idea of commercial viability. And that's exactly what they did below. Instead of taking the holding of Parker Vision versus Qualcomm on its face, what it says, they instead interpret it or try to reinterpret it to say that successfully down converts actually means, and I quote here from the Blueberry Fest 69, successfully down converts actually means it must meet certain specifications and telecommunications standards so that the system is commercially viable. And that's exactly what we heard argued here today. And that is not, there's no reason for the court to rewrite the Qualcomm holding in this way. Successfully down converts means exactly that. The receiver successfully down converts to recover the baseband signal from the carrier signal. And so putting aside this commercially viable business, what was your evidence that there was success in down converting? First, as found by the board at Appendix 64, the disclosure of LAM itself provides evidence that the identified capacitors constitute claimed storage elements. And in particular, the board noted that LAM discloses receivers that are high-speed receivers from narrowband communication systems that are used in mobile handheld communication systems.  2144, the LAM patent at Column 1, Lines 6 and 7, and 19 through 25. Further, LAM discloses at Appendix 2146, this is Column 5, Lines 50 through 60, that quote, the receiver illustrated in Figure 3 in accordance with the present invention down converts the incoming RF signal into baseband components. That's exactly what's called for in the Parker v. Qualcomm decision. What page in the appendix there? This is Appendix 2146. Is this something the board found, or you're just looking at the underlying source? The board did include that in describing the party's arguments, yes. And with respect to the, again, this is Column 5, Lines 50 to 60, this is almost verbatim saying what Qualcomm says is required for showing non-manageability. That the receiver, in accordance with the present invention, the present invention of an enabled U.S. patent, down converts the incoming RF signal into baseband components. That is a successful down conversion. That demonstrates that there's non-negligible energy being transferred. And that shows, so there is evidence in the record, substantial evidence of that being disclosed in LAM. Second, the board at Appendix 58 through 59 and indirectly at Appendix 64 relied on Dr. Shoemake's expert testimony that LAM teaches sampling circuits using sample and hold capacitors that both alone and in combination with them result in down conversion of the I and Q baseband signals. And in particular, the board directly cited to paragraphs 120 and 121 of Dr. Shoemake's testimony that regarding the capacitors taught in LAM for down converting an RF input signal. And that's at Appendix 58 through 59 again. Further, the board indirectly cites Dr. Shoemake's testimony via citations to the petition and the reply brief, which of course then in turn cite Dr. Shoemake's testimony. For example, in the board's order at Appendix 64, it cites pages 17 through 19 of the reply brief below for the proposition that, quote, LAM functions in practice and successfully down converts. Now those pages of our reply are found in Appendix 4529 and they expressly rely on paragraphs 102 through 104 of Dr. Shoemake's testimony and supported the same proposition. So given this presumption of enablement and given the disclosure of LAM and given the reference to expert testimony, there is substantial evidence in the record that LAM discloses the storage elements in view of the discussion of Park Division versus Qualcomm. Now unless the court has further questions, I'll conclude my argument. Thank you. We only have two minutes of rebuttal because we haven't done your rebuttal time. I'm sorry. Well, we still have two minutes of rebuttal. Oh, thank you very much. OK, if I may. OK, so I'll work backwards from what he said. He just pointed you to a whole bunch of things in the record. None of them talks about non-manageable amounts of energy, not one of them. So you asked, where is this evidence? There is no evidence. That's why the court had a backfill. That's why the board had a backfill and used this concept of enablement, which, by the way, is inherency. And they haven't met the, and we put that in our brief too, they haven't met the elements of inherency. That was in your gray brief, right? In our gray brief, I believe, yeah. Not your blue brief. I don't think it was in the blue brief. I don't recall. But the one thing I want to point to in terms, so he didn't address any of your question. He just pointed to a whole bunch of other stuff that had nothing to do with that. In terms of going back to, Judge Chen, your issue about foreseeability, they knew, it was stapled to their petition, and they knew that this construction was relevant. It was foreseeable. It's a common thread through all Parker vision cases. Every Parker vision case, we talk about non-negligible amounts of energy. That's always what we talk about. That's part of the crux of the invention. And so they completely knew about it. And once they knew about it, they had the burden at the onset to address that issue and address this non-negligible amount of energy issue. And they failed to do so. They failed to do so. And even when they had the opportunity to do so in the reply brief, they couldn't get a paid expert to contradict what Dr. Stier said. They couldn't get anybody to say, yes, we're correct, and Dr. Stier's wrong, and by the way, it's commercially viable. It's a commercially viable system, Lamin-N's, and by the way, it discloses non-negligible amounts of energy, and Stier got it wrong. They couldn't even do that. And in terms of the timing, their petition was filed, I believe, nine days after we first introduced in the earlier case the concept of our calculations, which ultimately were struck. So there was a nine-day period in there. And if you go to page 26 of our grade brief, I believe it is, 26 of our grade brief discloses the timing of when they should have known, when they had knowledge of things. So Judge Chen, as you said, completely foreseeable. They should have addressed it. This is nothing like what was going on in the previous case. They didn't address it. And there's no evidence whatsoever. Anything he just talked about, there is no evidence in that about non-negligible amounts of energy. And that's why the court, the board, when they were making their decision, they had to backfill. They had to come up with something else to get to the result they wanted, which was ultimately invalidity. They couldn't point to anything in the record because there wasn't. It was only Dr. Stier, unrebutted testimony, completely unrebutted, credibility not questioned, and they had the burden, and they failed to meet that burden. And that's all. Thank you. Case is submitted.